Everett HADIX; Richard Mapes; Patrick C. Sommerville; Roosevelt Hudson, Jr.; Brent E. Koster; Lee D. McDonald; Darryl Sturges; Robert Flemster; William Lovett; James Covington; Frank Thomas; James Haddix; James Alexander; Al Buttons; James Chipman; Perry Alan Davis; Michael Anthony Gray; Mark Lemothe; Cylester Nunnally; Ted Rhode; Orvel Simmons; Ted Sullivan; and Mark A. Coleman; Plaintiffs,

v.

Perry M. JOHNSON; Barry Mintzes; Charles Anderson; William F. Grant; Dale Foltz; Daniel Trudell; Duane Sholes; John Jabe; James Pogats; Roy Rider; Charles Ustess; Don P. Leduc; Elton I. Scott; Pam Withrow; Frank Elo; Marjorie Van Ochten; and John Prelesnik; Defendants.

Gary KNOP; John Ford; William Lovett, II; Ramando Valeroso; Gus Jansson; Pat Sommerville; Vernard Cohen; T. Jon Spytma; Robert Shipp; Butch Davis; Ron Mixon; and Kerwin Cook, All individually and on behalf of all other persons similarly situated; Plaintiffs,

v.

Perry M. JOHNSON; Robert Brown, Jr.; Dale Foltz; John Jabe; Theodore W. Koehler; John Prelesnik; and Jack Bergman, Defendants.

Nos. 4:92:CV:110, 1:84:CV:651.

United States District Court,
W.D. Michigan.

May 23, 1997.

William L. Fette, Cornell, Dalzell, Fette, Ramey, & Shek, Kalamazoo, MI, Patricia A. Streeter, Detroit, MI, Theresa A. Chamara, Bruce J. Ennis, Mark D. Schneider, Donald B. Verrilli, Jr., Jenner & Block, Washington, DC, Elizabeth Alexander, Adjoa Aiyetoro, Nat. Prison Project of the ACLUF, Washington, DC, for plaintiffs in No. 4:92:CV:110.

Frank J. Kelley, Atty. Gen., Leo H. Friedman, Susan Przekop-Shaw, Corrections Div., Lansing, MI, Michael A. Nickerson, Asst. Atty. Gen., Accident Fund Div., Lansing, MI, Susanne Durk McAra, Health Professionals Div., Lansing, MI, for defendants in No. 5:84:CV:651.

Patricia A. Streeter, Neal Bush, Detroit, MI, Deborah A. LaBelle, Deborah LaBelle Law Offices, Detroit, MI, Elizabeth Alexander, Nat. Prison Project of the ACLUF, Washington, DC, Jeanne E. Mirer, Barnhart & Mirer, PC, Detroit, MI, Larry W. Bennett, Cox, Hodgman & Giarmarco, Troy, MI, Michael Barnhart, Law Offices of Michael J. Barnhart, Detroit, MI, for plaintiffs in No. 4:92:CV:110.

Michael Hayes Dettmer, U.S. Atty., Grand Rapids, MI, Timothy R. Payne, Laurie J. Weinstein, Margo Schlanger, U.S. Dept. of Justice, Special Litigation Section, Washington, DC, for U.S. in No. 4:92:CV:110.

Frank J. Kelley, Atty. Gen., E. Michael Stafford, Asst. Atty. Gen., Leo H. Friedman, Susan Przekop-Shaw, Kim G. Harris, Asst. Atty. Gen., Corrections Division, Lansing, MI, Michael A. Nickerson, Asst. Atty. Gen., Accident Fund Division, Lansing, MI, Susanne Durk McAra, Health Professionals Division, Lansing, MI, for defendants in No. 4:92:CV:110.

ENSLEN, Chief Judge.

### OPINION

These matters are before the Court on plaintiffs' motions for attorneys' fees for the time period between January 1, 1996 and December 31, 1996, filed on September 23, 1996, and April 14, 1997. The parties have resolved some of the issues with respect to attorneys' fees, but disagree over the hourly rate to which plaintiffs' counsel are entitled, and about certain hours for which plaintiffs' counsel are requesting compensation.

### FACTS

These cases have been consolidated on the issue of access to the courts. Plaintiffs in both cases have been awarded attorneys' fees for the work their counsel have performed while monitoring the defendants' compliance with the Court's orders. The procedure the parties follow is that plaintiffs submit to defendants a report of the costs for each six month period. Generally, the parties reach an agreement on the issue of fees every six months. However, when, as now, they can not settle the issue among themselves, they request the Court's assistance. The present dispute over fees involves a question of law which arises from the passage of the Prison Litigation Reform Act, Pub.L. No. 104–134, ("PLRA" or "the Act"), on April 26, 1996. Plaintiffs' motion of September 23, 1996 involves the period of January 1, 1996 through June 30, 1996. The April 14, 1997 motion is with respect to work performed between July 1, 1996 and December 31, 1996.

### DISCUSSION

Both of the pending motions for fees raise the question of whether amendments contained in the PLRA apply to these cases. Furthermore, the September 23, 1996 motion raises specific objections by defendants to entries contained in plaintiffs' list of attorney fees and costs for January 1, 1996 through June 30, 1996.

#### Application of the PLRA

Section 803 of the Act amends 42 U.S.C. § 1997e, which applies to suits by prisoners with respect to prison conditions. Subsection (d) provides for attorneys' fees in such cases.[1]

---

1. Subsection (d) reads:

   (1) In any action brought by a prisoner who

is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such

The parties disagree over whether the PLRA amendment applies to these actions. The defendants contend that the hourly rate for plaintiffs' counsel is limited by § 1997e(d)(3), whereas the plaintiffs argue that their counsel are entitled to the rate they have been receiving, which is $150 for attorneys Patricia Streeter, Michael Barnhart, Elizabeth Alexander, and Margaret Winter. Plaintiffs' other billing rates are: $130 for attorney Ayesha Kahn; $80 and $40 for law student interns; and $65 for law clerk Jenny Epstein.

The Supreme Court set forth the analysis to apply when determining whether a newly-passed statute applies to pending litigation in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The court must first look to "whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280, 114 S.Ct. at 1505. If there is no such expressed intent for the application of the statute, the court follows the general presumption that it is to apply the law as it exists at the time the decision is rendered, unless the new statute would have a retroactive effect. *Id.* If the statute does have a retroactive effect, the presumption is that it should not be applied to the pending matter. *Id.*

*Legislative Intent*

Plaintiffs argue that the language of the statute itself indicates an intention by Congress that the statute should only be applied to cases that are filed after the PLRA was passed. They base this argument on the phrases in subsection (d)(1), "in any action

brought" and "such fees shall not be awarded." Plaintiffs contend that these phrases are in the future tense and therefore apply only to future cases. In support of their argument, plaintiffs cite to a recent case in which the Sixth Circuit Court of Appeals held that the language contained in § 1997e(a), which was also added by the PLRA, limits its application to cases filed after the PLRA was enacted. *Wright v. Morris,* 111 F.3d 414 (6th Cir.1997).

The Court disagrees with the plaintiffs' interpretation of the tenses of the two phrases in § 1997e(d)(1). The word "brought," although a past tense verb, can either be used in the past tense or in the future tense, depending upon other verbs used with it. For example, one can say "the suit was brought in federal court," or one can say, "the suit will be brought in federal court." Unlike in the subsection analyzed in *Wright,* which reads that "no action **shall be brought** ...," Congress did not put any modifying verbs in subsection (d). Without such a modification, the clause identifies only who may bring a suit, without specifying when the suit must be brought.

The phrase "shall not be awarded" is in the future tense, however it only can be interpreted to mean that the fees have not yet been awarded, not that the case has not yet been filed. There is no basis for plaintiffs' interpretation of that phrase as applying only in cases which have not yet been filed.

fees shall not be awarded, except to the extent that-
  (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
  (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
  (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.
  (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount

of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.
  (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.
  (4) Nothing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to section 1988 of this title.

Furthermore, the lack of clarifying language in section 803 of the Act does not support a finding that Congress expressly intended that the amendment to § 1997e would apply only to cases filed after the PLRA was passed. The fact that section 802 of the Act expressly provides that it applies to pending cases, and section 803 does not so provide, does not necessarily mean that section 803 does not apply to pending cases. *Landgraf*, 511 U.S. at 259–63, 114 S.Ct. at 1493–96 (rejecting the argument that where Congress explicitly provided for prospective application in certain sections of an act, all other sections of the act were meant to be applied retroactively).

Nor can plaintiffs successfully argue that previous versions of the bill conclusively establish legislative intent as to the application of the amendments to § 1997e. Plaintiffs note that the amendment to this section was originally included in section 802 of the PLRA, which contains the express provision that it should apply to cases arising before the enactment of the Act, but that in the signed version the amendment was contained in section 803. Without an explanation as to why the amendment was transferred to a different section, it is impossible for the Court to glean a general agreement as to the intended application of the amendments. *Id.* at 250–51, 114 S.Ct. at 1489–90.

Absent an ability to determine Congress' intent as to whether the amendments contained in Section 803 should apply to cases which arose prior to the enactment of the PLRA from either the plain language of the statute or the legislative history of the statute, the Court must turn to alternative methods for making such a determination.

*Application of Principles of Statutory Construction*

There are two principles of statutory construction which must be considered when determining whether to apply a statute to a case that is pending at the time the legislation was passed. The first is that the court should apply the law that is in effect at the time of its decision. *Landgraf*, 511 U.S. at 264, 114 S.Ct. at 1496. The second is that laws should not be applied retroactively. *Id.* The tension between these canons is resolved by applying the law in effect at the time the decision is made unless a statute would operate retroactively to events which occurred before the statute was passed. *Id.* at 280, 114 S.Ct. at 1505.

Applying these canons to the present issue, the Court must determine whether the PLRA would have a retroactive effect if applied to limit the plaintiffs' attorneys' hourly rate for work performed after April 26, 1996.[2] A statute is retroactive if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* The purpose of the rule is to avoid disruption of settled expectations as to the law at the time the parties acted. *Id.* at 252, 114 S.Ct. at 1490.

In order to determine whether the PLRA would have a retroactive effect, the Court

**2.** Many courts have already determined that applying the PLRA limitation on attorneys' fees for work performed prior to the enactment of the PLRA is impermissibly retroactive. *Cooper v. Casey*, 97 F.3d 914, 921 (7th Cir.1996) (application of PLRA would attach new legal consequences to services rendered by plaintiffs' counsel in advance of its passage); *Jensen v. Clarke*, 94 F.3d 1191, 1202–03 (8th Cir.1996) (PLRA was enacted well after both the liability and attorneys' fee determinations in the case); *Weaver v. Clarke*, 933 F.Supp. 831, 835 (D.Neb.1996) (declining to apply narrowed definition of prevailing party); *Miller–Bey v. Stiller*, No. 93–CV–7211 1–DT (E.D.Mich. Feb. 25, 1997) (Order Adopting Magistrate Judge's Report and Recommendation); *Coleman v. Wilson*, No. Civ. S–90–0520 LKK JFM P (E.D.Cal. Jan. 21, 1997) (Report and Recommendation); *Gates v. Gomez*, No. CIV S– 87–1636 LKK JFM P (E.D.Cal. Jan. 8, 1997) (Order Adopting Report and Recommendation of Nov. 25, 1996); *Hurley v. Coughlin III*, No. 77 Civ. 3847(RLC) (S.D.N.Y. Dec. 19, 1996); *Browning v. Vernon*, No. CV 91–0409–S–BLW (D.Idaho Oct. 2, 1996) (Report and Recommendation); *Webb v. Ada County*, CV 91–0204–S–EJL (D.Idaho Sept. 3, 1996) (Order Adopting Report and Recommendation); *Anderson v. County of Kern*, No. CIV F–90–0205 GEB JFM P (E.D.Cal. Sept. 30.1996) (Order Adopting Report and Recommendation); *Chappell v. Gomez*, C 93–4421 FMS (N.D.Cal. Aug. 8, 1996); *Hadix v. Johnson*, No. 80–73581 (E.D.Mich. May 30,1996); *Glover v. Johnson*, No. 77–71229 (E.D.Mich. May 30, 1996); *Alexander S. v. Boyd*, No. 3–90 3062–17 (D.S.C. May 29, 1996) (Order Awarding Attorneys' Fees).

must first address the issue of what affect the application of the Act would have. The parties disagree over the hourly rate to which plaintiffs' counsel would be entitled under the PLRA. The section provides that an award of attorneys' fees shall be no higher than 150 percent of the hourly rate established under 18 U.S.C. § 3006A(d), which sets forth the maximum hourly rate at which court-appointed attorneys in criminal cases may be compensated. The current hourly rates are $65 for time spent in court, and $45 for time spent out of court. There is also a provision for determination by the Judicial Conference that attorneys within a particular circuit or district may receive $75 per hour for all of their time. Such a determination has been made for attorneys whose principal office is located in Detroit. The rate has also been set at $75 for attorneys with principal offices in Washington, D.C. Each of the attorneys in these cases has his or her principal office in either Detroit or Washington, D.C. Accordingly, the hourly rate for which plaintiffs' counsel may be compensated if the PLRA is applied is $112.50.[3]

■ The Court now turns to the question of whether reducing plaintiffs' attorneys' billing rate from $150 to $112.50 would be impermissibly retroactive. Plaintiffs argue that application of the attorney fee amendments would be retroactive and inequitable, and would disrupt their settled expectations as to their entitlement to fees. They argue that the existence of 42 U.S.C. § 1988 at the time they filed their lawsuits created an expectation of an award of reasonable attorneys' fees if they prevailed. Defendants, on the other hand, argue that while plaintiffs are entitled to collect attorneys' fees as the prevailing parties in these matters, plaintiffs do not have a right to a particular hourly rate.

At the time that these actions were filed, the law with respect to attorneys' fees was governed by 42 U.S.C. § 1988. That section provides that the court may award the prevailing party in a civil rights action, as are the present actions, reasonable attorneys'

fees. Thus, when they were deciding whether to take these cases, plaintiffs' attorneys knew that if the claims were found to be meritorious, they would be able to collect a reasonable amount from defendants as reimbursement for their work. Their entitlement to collect fees was a consideration when they were making the decision to take on these cases, and is, therefore, a settled expectation which can not now be disrupted.

Even if plaintiffs' counsel had not had such an expectation when they decided to file these actions, they currently have settled expectations as to fees because the determinations that the plaintiffs are entitled to receive reasonable attorneys' fees were made long ago. As stated by the Sixth Circuit Court of Appeals in an earlier decision in *Hadix*, "[t]he consent decree that governs this case virtually guarantees fee awards." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir.1995). Furthermore, this Court determined that with respect to the issue of access to the courts, which was not settled by the consent decree, plaintiffs were the prevailing parties and thus entitled to fees related to that issue. *Hadix*, Opinion & Order of Jan. 4, 1994, dkt. ## 256, 257, *affd*, No. 94–1158, 1995 WL 25416 (6th Cir. Jan. 23, 1995); *Knop*, Opinion and Order of Apr. 5, 1989 & Stipulation and Order of Feb. 17, 1994. Therefore, plaintiffs' entitlement to receive attorneys' fees from defendants is a settled expectation that can not be disrupted at this stage.

Having established that plaintiffs have a settled expectation to reasonable attorneys' fees, the Court must determine whether $112.50 per hour constitutes reasonable attorneys' fees. As the Sixth Circuit previously stated in *Hadix*,

[a]ttorney fees under § 1988 are to be based on market rates for the services rendered. *Missouri v. Jenkins*, 491 U.S. 274, 283[, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229] (1989). Ordinarily, courts look to "[rates] prevailing in the community for similar services by lawyers of reasonably

---

**3.** Plaintiffs argue that rather than applying the subsection of § 3006A entitled "payment for representation," the Court should apply the hourly rate for capital cases set forth in 21 U.S.C.

§ 848(q)(10) because the authority for that section is found in § 3006A(a). The Court fails to see the logic in this argument.

comparable skill, experience, and reputation." *Blum* [*v. Stenson*, 465 U.S. 886,] 896 n. 11[, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891] [ (1984) ]; see also *American Fed'n of Gov't Employees, AFL–CIO Local 3882 v. Federal Labor Relations Authority*, 944 F.2d 922, 937 (D.C.Cir.1991) (a reasonable fee equates to a market-rate fee).

*Hadix*, 65 F.3d at 536.

This Court has determined that the hourly rates of $150 per hour for lead counsel, and $135 for associate counsel, accurately establish the prevailing market rate, and therefore constitute the basis for the calculation of reasonable attorneys' fees in accordance with § 1988. The Sixth Circuit Court of Appeals has affirmed that determination. *Id.*

Applying the PLRA rate to plaintiffs' counsel would give them an hourly rate that is one-fourth less than the established prevailing market rates. The Court finds that such a reduction disrupts their settled expectations to reasonable attorneys' fees. Therefore, the PLRA amendments to § 1997e(d) are impermissibly retroactive as applied to the present actions.[4]

For these reasons, the Court finds that § 1997e(d)(3) has an impermissible retroactive effect, and will not be applied to services performed by plaintiffs' counsel after April 26, 1996.[5]

4. Defendants' argument that applying the PLRA to work performed after April 26, 1996 is not retroactive because it would not affect events that have already been completed is persuasive. However, that is only one of the three tests for determining if a statute is retroactive. Here, the statute is impermissibly retroactive because it impairs rights the plaintiffs possessed when they acted.

5. The Court is aware of a number of other cases in which attorneys' fees for work performed after the passage of the PLRA were at issue. In three of them, the courts specifically addressed the distinction between work performed before and after the enactment of the PLRA, and held that the PLRA cap on hourly rates does apply to services provided after April 26, 1996. *Hadix v. Johnson*, 947 F.Supp. 1113 (E.D.Mich.1996); *Glover v. Johnson*, No. 77–71229 (Dec. 4, 1996 E.D. Mich.); *Duran v. Johnson*, No. CIV 77–0721 JC (Apr. 3, 1997 D.N.M.). In two cases, the courts awarded fees at pre-PLRA rates for work

**Specific Hours in Dispute**

For the time period of January 1, 1996 through June 30, 1996, there are a total of 714.2 hours in dispute with respect to three different categories of work performed by plaintiffs' attorneys.

*Work Researching and Writing PLRA Brief*

■ Defendants object to the fees request for time expended relating to issues raised in *Hadix* by the enactment of the PLRA. This time consists of 94.3 hours of work performed in the office of the National Prison Project,[6] 8.3 hours of work by Patricia Streeter, and 5 hours of work by Michael Barnhart. The defendants argue that this is an excessive amount of time for plaintiffs to have spent on the PLRA issue, because the plaintiffs' 83–page memorandum was almost identical to one filed in a case in the U.S. District Court for the Southern District of New York, *Benjamin v. Jacobsen*, No. 75–Civ–3073.

The plaintiffs do not dispute that the brief filed in this case and that filed in *Benjamin* were similar. However, they state that the portions of the briefs involving the equal protection and due process arguments were written by attorneys and staff at the National Prison Project for this case, and were shared with the attorneys involved in *Benjamin*. Thus, the work should be compensated in this case. Plaintiffs further state that the

done after the PLRA was enacted, but did not discuss the legal issues raised by the distinction. *Miller–Bey v. Stiller*, No. 93–CV–72111–DT (E.D.Mich. Feb. 25, 1997); *Perrier v. City of Albuquerque*, No. 95–943 RLP WWD (Dec. 17, 1996 D.N.M.) In another case, the work had been performed between April 18, 1996 and April 29, 1996, but involved the dispute over attorneys fees. *Wolfgang v. Beasly*, Civ. No. 94–74673 (Apr. 4, 1997 E.D. Mich.) The court noted that the circumstances therein were unusual. *Id.* at 3. Finally, the courts in two cases stated in dicta that they would not apply the PLRA rates to work performed after the Act was passed. *Browning v. Vernon*, No. CV 91–0409–S–BLW (D.Idaho Oct. 2, 1996); *Chappell v. Gomez*, C 93–4421 FMS (N.D.Cal. Aug. 8, 1996).

6. The work of the National Prison Project was divided as follows: Elizabeth Alexander, 9.5 hours, Ayesha Khan, 75 hours, law clerk Jenny Epstein, 8 hours, and student interns, 1 hour.

remaining portions of the briefs were adapted from the brief written by the *Benjamin* attorneys, and the plaintiffs have not sought compensation for time spent on those sections. Thus, time was actually saved in this case, because the plaintiffs in this case did not have to write the entire 83–page brief, which, as noted by Judge Feikens, would have taken many more hours than the 94 requested on behalf of the National Prison Project. *Hadix*, 947 F.Supp. at 1116.

With respect to the 13 hours of work performed by Ms. Streeter and Mr. Barnhart, the Court finds that that is a reasonable amount of time to spend adapting the *Benjamin* brief to the present case, and preparing the six-page declaration of Mr. Barnhart providing the history of the case. Again, much time was saved by utilizing the research performed by the *Benjamin* attorneys.

Defendants' objections to the 107.6 hours claimed by plaintiffs as time spent on the memorandum submitted to this Court regarding the constitutionality of the PLRA are overruled.

### Work Related to Health Issues

Defendants object to 36.6 hours of time billed by Patricia Streeter, and 1 hour of time billed by Michael Barnhart, related to health issues in *Hadix*.

Defendants state that 6 of the hours claimed by Patricia Streeter were spent traveling to and from Jackson to pick up information and transport Ms. Alexander to the airport. Plaintiffs explain that those six hours of travel time on April 2 and 5, 1996 were required to attend meetings with co-counsel and plaintiffs' medical expert. Ms. Streeter also states that she picked up Ms. Alexander from the airport on the way to save the expense of car rental. The Court finds that the six hours are a reasonable expense in relation to the medical health issues.

Defendants also dispute the 30.6 hours that plaintiffs say Ms. Streeter worked in response to defendants' revised medical disabilities plans. They argue that this amount of time is excessive considering the scope of the issue. In defense of the amount of time spent, Ms. Streeter explained that she has primary responsibility among the three attorneys for the medical disabilities issues. Her response addressed two separate plans, and involved review of various lengthy documents, and consultation with plaintiffs' expert. The Court finds the justification of the 30.6 hours sufficient, and defendants' objection is overruled.

The hour of Mr. Barnhart's time to which defendants object was spent on telephone calls related to transportation of prisoners to off-site locations for medical treatment. The Court does not accept defendants' argument that this is a non-consent decree issue, because the provision of medical treatment to SPSM inmates is a consent decree issue, even when done at a facility that is not covered by the consent decree. Therefore, defendants' objection to the hour billed for January 29, 1996 is overruled.

### Work on Access to Courts Issue

Defendants object to the 348.8 hours billed by Ms. Streeter, and the 221 hours billed by Mr. Barnhart, on the issue of access to the courts for both *Hadix* and *Knop*. Defendants argue that this amount of time is excessive, particularly in light of the fact that Ms. Alexander billed only 72 hours on the issue for the *Knop* case.

The Court first notes that the appropriate amount of time can not be determined by comparing the time spent by Ms. Streeter and Mr. Barnhart to that spent by Ms. Alexander on the issue. As stated by the plaintiffs, and as was apparent to the Court at the hearings on the issue, each attorney had different responsibilities with respect to the issue of access to the courts. The work performed by each attorney was applicable to both cases, as they are proceeding jointly at this stage.

With respect to the reasonableness of the total number of hours spent on the issue, the Court agrees that the issue was particularly active during the period between January 1, 1996 through June 30, 1996. During that time the parties submitted briefs regarding the Plan for Legal Assistance, the Court ordered the parties to meet with the independent expert on the issue and develop and evaluate a revision of the Plan, and the Court conducted a status conference and a hearing

on the issue. Given the extensive amount of work required on the issue of access to the courts during the relevant time period, the Court finds that the total of 569.8 hours is not unreasonable, and defendants' objection is overruled.

## CONCLUSION

For the foregoing reasons, plaintiffs' motions for attorneys' fees will be granted. The Court finds that the amendments to the provisions for attorneys' fees in prison condition cases contained in the Prison Litigation Reform Act of 1995 do not apply to the present actions.

### *ORDER*

In accordance with the Opinion issued this date;

**IT IS HEREBY ORDERED** that plaintiffs' motions for attorneys' fees, filed September 23, 1996 (dkt. # 805 in *Hadix;* dkt. # 1254 in *Knop* ), are **GRANTED;**

**IT IS FURTHER ORDERED** that plaintiffs' motions for attorneys' fees, filed April 14, 1997 (dkt. # 872 in *Hadix;* dkt. # 1288 in *Knop* ), are **GRANTED.**